

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed June 27, 2024**

_____
**United States Bankruptcy Judge**

_____

### UNITED STATES BANKRUPTCY COURT
### NORTHERN DISTRICT OF TEXAS
### FORT WORTH DIVISION

| | | |
|---|---|---|
| In re:<br><br>  Iced Tea with Lemon, LLC,<br><br>        Debtor. | §<br>§<br>§<br>§<br>§ | Chapter 7<br><br>Case No. 24-41976 (ELM) |
| In re:<br><br>  Tres Peliculas, LLC,<br><br>Debtor. | §<br>§<br>§<br>§<br>§ | Chapter 7<br><br>Case No. 24-41977 (MXM) |
| In re:<br><br>  Cinco Peliculas, LLC,<br><br>Debtor. | §<br>§<br>§<br>§<br>§ | Chapter 7<br><br>Case No. 24-41978 (MXM) |
| In re:<br><br>  Seis Peliculas, LLC,<br><br>Debtor. | §<br>§<br>§<br>§<br>§ | Chapter 7<br><br>Case No. 24-41979 (ELM) |
| In re:<br><br>  Woodbury Alamo, LLC,<br><br>Debtor. | §<br>§<br>§<br>§<br>§ | Chapter 7<br><br>Case No. 24-41980 (ELM) |

| In re: | § | Chapter 7 |
|---|---|---|
| | § | |
| Dos Peliculas, LLC, | § | Case No. 24-41981 (ELM) |
| | § | |
| Debtor. | § | |

**ORDER GRANTING TRUSTEES' JOINT EMERGENCY MOTION FOR
AUTHORITY TO SELL PROPERTY OF THE ESTATE FREE
AND CLEAR OF LIENS, CLAIMS, AND ENCUMBRANCES AND PROVIDE FOR THE
ASSUMPTION & ASSIGNMENT OF EXECUTORY CONTRACTS AND
<u>UNEXPIRED LEASES</u>**

Upon the *Trustees' Emergency Motion for Authority to Sell Property of the Estate Free and Clear of Liens, Claims, and Encumbrances* (the "**Motion**") filed by Roddrick Breon Newhouse, Chapter 7 Trustee for the bankruptcy estates of Iced Tea with Lemon, LLC, Tres Peliculas, LLC, Seis Peliculas, LLC, and Woodbury Alamo, LLC; Behrooz P. Vida, Chapter 7 Trustee for the bankruptcy estate of Cinco Peliculas, LLC; and Marilyn D. Garner, Chapter 7 Trustee for the bankruptcy estate of Dos Peliculas, LLC (each, a "**Trustee**" and collectively, the "**Trustees**") for entry of any order authorizing or approving, among other things, (i) the sales of the assets of Iced Tea with Lemon, LLC; Tres Peliculas, LLC; Cinco Peliculas, LLC; Seis Peliculas, LLC; Woodbury Alamo, LLC; and Dos Peliculas, LLC, (each a "**Debtor**" and collectively, the "**Debtors**") free and clear of all liens, claims, encumbrances, and other interests (except certain permitted encumbrances and/or assumed liabilities as determined by the Sellers and Alamo Intermediate II Holdings, LLC (together with certain of its affiliates and permitted assigns, "**Buyer**"), (ii) the Trustees to assume and assign to Buyer certain executory contracts and unexpired leases, and (iii) related relief; and the Trustees having identified the offer by Buyer as the highest and otherwise best offer for the Acquired Assets; and the Court having found that proper and adequate notice of the Motion and the relief requested therein has been provided under the circumstances, and that, except as otherwise ordered herein, no other or further notice is necessary; and any objections (if any) to the Motion having been withdrawn or overruled on the merits; and a hearing on the Motion (the "**Sale Hearing**") having been held to consider the relief requested in the Motion and to review and consider (i) the Motion and the exhibits thereto, and (ii) the asset purchase agreement, dated as of June 25, 2024, by and among the Trustees and Buyer, a

2

copy of which is attached hereto as <u>Exhibit 1</u> (together with any schedules and exhibits thereto, the

"**<u>APA</u>**")[1] whereby the Trustees have agreed, among other things, to sell the Acquired Assets (as

defined in the APA) to Buyer on the terms and conditions set forth in the APA (collectively, the

"**<u>Sale</u>**"); and upon the record of the Sale Hearing, all of the proceedings had before the Court, and

all other pleadings in these chapter 7 cases, including this Motion; and the Court having found and

determined that the relief sought in the Motion is in the best interests of the Debtors, their estates,

their creditors and all other parties-in-interest; and that the legal and factual bases set forth in the

Motion establish just cause for the relief granted herein; and after due deliberation and sufficient

cause appearing therefor,

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.　　The Motion is **GRANTED** in all respects;

2.　　All objections, reservations of rights regarding, or other responses to, the Motion or

the relief requested therein, the APA, the Sale, entry of this Order, or the relief granted herein,

including, without limitation, any objections to Cure Costs or relating to the cure of any defaults

under any of the Designated Contracts or the assumption and assignment of any of the Designated

Contracts to the Buyer by the Trustees, solely as it relates to the relief granted by this Order that

have not been adjourned, withdrawn or resolved as reflected on the record at the Sale Hearing are

overruled in all respects on the merits with prejudice, except as otherwise set forth herein. All

parties that failed to timely object to the Motion are deemed to have consented to the relief granted

herein for all purposes. The Court's oral ruling at the conclusion of the hearing is incorporated by

reference herein.

3.　　Notice of the Motion, the Sale Hearing, the APA, and the relief granted in this Order

was fair, sufficient, proper and equitable under the circumstances.

4.　　The sale of the Acquired Assets to Buyer on the terms and conditions set forth in the

APA is approved;

5.　　The APA and the Sale, including, without limitation, all transactions contemplated

therein or in connection therewith and all of the terms and conditions thereof, are hereby approved

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the APA or the Motion, as applicable.

in their entirety, subject to the terms and conditions of this Order. The failure specifically to include or make reference to any particular provision of the APA in this Order shall not impair the effectiveness of such provision, it being the intent of the Court that the APA, the Sale and the transactions contemplated therein or in connection therewith are authorized and approved in their entirety.

6. The Buyer is giving substantial consideration under the APA, and as provided herein, for the benefit of the respective bankruptcy estates of each of the Debtors. The consideration provided by the Buyer for the Acquired Assets under the APA shall be deemed for all purposes to constitute reasonably equivalent value and fair consideration under the Bankruptcy Code and any other applicable law, and the sale of the Acquired Assets may not be avoided, or costs or damages imposed or awarded under Bankruptcy Code section 363(n) or any other provision of the Bankruptcy Code, the Uniform Voidable Transactions Act, the Uniform Fraudulent Transfer Act, the Uniform Fraudulent Conveyance Act, or any other similar federal or state laws.

7. The Trustees have demonstrated that their entry into the APA is supported by good, sufficient and sound business reasons. A sale of the Acquired Assets, including the assignment of the Designated Contracts, will maximize the value of the Debtors' estates and represents a reasonable exercise of the Debtors' sound business judgment. The Trustees determined that the APA constitutes the highest and otherwise best offer for the Acquired Assets, and pursuant to the terms and conditions of the APA, the Trustees have agreed to transfer to Buyer all of the bankruptcy estates' right, title and interest in and to the Acquired Assets, free and clear of all liens, claims, encumbrances, or other interests, and, to assume and assign the Designated Contracts to Buyer subject to the terms and conditions of the APA and this Order, and such determination is a valid and sound exercise of the Trustees' business judgment.

8. Pursuant to sections 105, 363 and 365 of the Bankruptcy Code, the Trustees are authorized to perform their obligations under and comply with the terms of the APA, pursuant to and in accordance with the terms and conditions of the APA and this Order. The Trustees and Buyer, as well as their affiliates, officers, employees and agents, are authorized to execute and

deliver, and empowered to perform under, consummate and implement, the APA, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the APA and the Sale, and to take all further actions and execute such other documents as may be (a) necessary or appropriate to the performance of the obligations contemplated by the APA, and (b) as may be reasonably requested by Buyer to implement the APA and the Sale, in accordance with the terms thereof, without further order of the Court. The Buyer shall not be required to seek or obtain relief from the automatic stay under section 362 of the Bankruptcy Code to enforce any of its rights or remedies under the APA or any other Sale-related document.

9.      Except as otherwise set forth in this Order, effective as of the consummation of the Sale at Closing, pursuant to sections 105(a), 363(b), 363(f), 365(b) and 365(f) of the Bankruptcy Code, the Sale of the Acquired Assets to Buyer shall (a) constitute a legal, valid and effective transfer of all of Debtors' right, title and interest in and to such Acquired Assets subject to and in accordance with the APA, and (b) vest Buyer with all of the bankruptcy estates' right, title and interest in and to such Acquired Assets free and clear of all liens, claims, encumbrances, or other interests, with any such valid pre-petition liens shall attach to the post-sale Cash Component to the same extent and priority as existed pre-petition. Allocation of the Cash Component will be subject to further Court approval on a separate motion by the Trustees. The provisions of this Order authorizing the Sale of the Acquired Assets free and clear of all liens, claims, encumbrances, or other interests upon the consummation of the Sale at Closing, except as otherwise expressly set forth in this Order, shall be self-executing, and neither the Trustees nor the Buyer shall be required to execute or file releases, termination statements, assignments, consents, or other instruments in order to effectuate, consummate, and implement the provisions of this Order. If any entity which has filed a financing statement, mortgage, mechanic's lien, *lis pendens,* or other statement, document, or agreement evidencing any liens on, or in, all or any portion of the Acquired Assets has not delivered to the Debtors prior to the Closing Date, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases, and/or any other documents necessary for the purpose of documenting the release and/or termination of all liens which the entity has or may assert with respect to all or any portion of the Acquired Assets,

then, upon consummation of the Sale at Closing, (a) the Trustees and the Buyer are hereby authorized to execute and file such statements, instruments, releases, and/or other similar documents on behalf of such entity with respect to the Acquired Assets, and (b) the Buyer is hereby authorized to file, register, or otherwise record a certified copy of this Order that, once filed, registered, or otherwise recorded, shall constitute conclusive evidence of the release and/or termination of all liens of any kind or nature against or in the Acquired Assets.

10. Pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, the sale and transfer of the Debtors' right, title and interest in the Acquired Assets to the Buyer upon the consummation of the Sale at Closing pursuant to the APA are a legal, valid, and effective disposition of the Acquired Assets, and vest the Buyer with all right, title, and interest of the bankruptcy estates to and in the Acquired Assets free and clear of all liens, claims, encumbrances, or other interests. The conditions of section 363(f) of the Bankruptcy Code have been satisfied in full, and, upon the consummation of the Sale at Closing, the Trustees' sale of the Acquired Assets shall be free and clear of any liens, claims, encumbrances, or other interests.

11. On the Closing Date and upon consummation of the Sale, each of the bankruptcy estates' creditors is authorized to execute such documents and take all other actions as may be reasonably necessary to release its liens or other interests in the Acquired Assets, if any, as such liens may have been recorded or may otherwise exist.

12. Neither the Buyer, nor any of its successors or assigns, or any of their respective affiliates shall have any liability for any lien, claim, or encumbrance that arose or occurred prior to the Closing, or that otherwise may be asserted against the Debtors, the Debtors' estates or is related to the Acquired Assets prior to the Closing. The Buyer (i) is not and shall not be deemed a "successor" to the Debtors or their estates; (ii) has not, *de facto* or otherwise, merged with or into the Debtors or their estates; (iii) does not have any common law or successor liability in relation to any employment plans; (iv) is not liable for any liability or lien against the Debtors or any of the Debtors' predecessors or affiliates or the Debtors' estates; and (v) is not an alter ego or mere continuation or substantial continuation of the Debtors, the enterprises of the Debtors or the Debtors' estates under any theory of law or equity as a result of any action taken in connection with

the APA, the Sale or any transactions or documents ancillary thereto or contemplated thereby or in connection with the acquisition of the Acquired Assets. Thus, the Buyer shall have no successor, transferee, or vicarious liability of any kind or character, including, but not limited to, under any theory of foreign, federal, state, or local antitrust, environmental, successor, tax, ERISA, assignee, or transferee liability, labor, product liability, employment including but not limited to with respect to any Multiemployer Plan), *de facto* merger, substantial continuity, or other law, rule, or regulation, whether known or unknown as of the Closing Date, now existing or hereafter arising, whether asserted or unasserted, fixed or contingent, liquidated or unliquidated with respect to the Acquired Assets, the Debtors, the Debtors' estates or any obligations of the Debtors or the Debtors' estates arising prior to the Closing Date. The Buyer shall not be deemed to have expressly or implicitly assumed any of the Debtors' or Debtors' estates' liabilities. Except as otherwise provided herein or in the APA, the transfer of the Acquired Assets to the Buyer pursuant to the APA shall not result in the Buyer or the Acquired Assets having any liability or responsibility for, or being required to satisfy in any manner, whether in law or in equity, whether by payment, setoff, or otherwise, directly or indirectly, any claim or lien against the Debtors, the Debtors' estates, or against any insider of the Debtors.

13.     Upon the consummation of the Sale at Closing, a certified copy of this Order may be filed and/or recorded with the appropriate filing agents, filing officers, administrative agencies or governmental departments, evidencing the release, cancellation and termination provided herein of any liens of record on the Acquired Assets prior to the date of this Order.

14.     Upon the consummation of the Sale at Closing, this Order shall be construed and shall constitute for any and all purposes a full and complete general assignment, conveyance and transfer of the Acquired Assets to Buyer and the bankruptcy estates' interests in the Acquired Assets acquired by Buyer pursuant to the terms of the APA and the Bill of Sale attached thereto.

15.     Buyer is not an "insider" or "affiliate" of any of the Debtors, the Debtors' estates or the Trustees as those terms are defined in section 101 of the Bankruptcy Code, and no common identity of incorporators, directors, managers, or controlling stockholders existed between the Debtors, the Debtors' estates or the Trustees and the Buyer. The APA, and each of the transactions

contemplated therein were negotiated, proposed and entered into by the Trustees and Buyer without collusion or fraud, in good faith, and from arm's-length bargaining positions, and are substantively and procedurally fair to all parties.

16.     Buyer is a good faith Buyer within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to, and is hereby granted, the full rights, benefits, privileges, and protections of section 363(m) of the Bankruptcy Code. The Sale contemplated by the APA is undertaken by Buyer without collusion and in good faith, as that term is defined in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein shall neither affect the validity of the Sale (including the assumption and assignment of the Designated Contracts) nor the transfer of the Acquired Assets owned by the Debtors to Buyer pursuant to the APA, free and clear of all liens, claims, encumbrances, and other interests. The Trustees and Buyer will be acting in good faith if they proceed to consummate the Sale at any time after entry of this Order.

17.     <u>Sale As Is, Where Is</u>.  The Acquired Assets to be sold hereunder shall be sold "as is, where is" without any representations or warranty of any kind, including, but not limited to, any warranty of fitness or warranty for a particular purpose.  The Trustees do not represent or warrant the quantity or the existence of any of the Acquired Assets, only that, to the extent that each Debtor has an interest therein, it is being sold to Buyer free and clear of liens, claims and interests consistent, and pursuant to Bankruptcy Code section 363(f).

18.     The Trustees are authorized under 11 U.S.C. § 721 to operate the businesses of the Debtors for a period of eight weeks after Closing, in order to enter into an Interim Management Agreement with the Buyer under applicable state laws of Texas and Minnesota. The Trustees and/or the Buyer may seek court approval, on an expedited basis, to extend the operating authority beyond eight weeks.

19.     <u>Assumption and Assignment of Executory Contracts and Unexpired Leases</u>. The Designated Contracts to be assumed by Sellers and assigned to Buyer pursuant to Section 365 of the Bankruptcy Code are those executory contracts and unexpired leases (i) included on Exhibit A attached to the APA or (ii) identified by Purchaser on or before the Assumption and Rejection

Notice Date and identified for assumption and assignment in accordance with the form Notice of Assumption and Assignment attached as Exhibit B to the APA unless otherwise removed by Buyer prior to the Closing, for any contract or lease listed on Exhibit A thereto, or removed by Buyer prior to the Assumption and Rejection Deadline, for any contract or lease identified with the filing of a completed Exhibit B thereto.

20.    Counterparties to contracts and leases identified with the filing and service of Notice of Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection with the Sale, in the form appearing as Exhibit B to the APA, shall have seven (7) days to object to the assumption and assignment of the identified contracts or the cure proposed thereby. A hearing shall be set by the Court to resolve any disputes, provided, however, that the Assumption and Rejection Deadline for any Designated Contract that is the subject of an objection and hearing shall be extended, for that contract or lease only, until such objection is disposed by order of the Court or agreement of the relevant parties.

21.    Any contract or lease that is not expressly assumed and assigned pursuant to the terms of the APA, notwithstanding anything to the contrary in the APA or this Order, shall be subject to a motion to reject such contract or lease by the Trustee, with all rights, remedies and claims of the Trustee, or the applicable Debtor counterparty in response to any such motion, reserved.

22.    At Closing, the Franchise Agreements listed on Exhibit C of the APA shall, as of 12:01 a.m. of the Closing Date, be deemed rejected by the Debtors pursuant to section 365(a) of the Bankruptcy Code and deemed terminated by Buyer, and such rejection and termination will occur automatically without the requirement of any further action on the part of the Sellers or Buyers to effect such rejection and termination.

23.    The closing of the transaction contemplated in the APA (the "**Closing**") shall occur upon the entry of this Order.

24.    In the event there is a conflict between this Order and the APA, this Order shall control and govern.

25. This Order and the relief provided herein is necessary to avoid immediate and irreparable harm in accordance with Rule 6003 of the Federal Rules of Bankruptcy Procedure.

26. The 14-day stay of sale orders provided for in Rule 6004(h) of the Federal Rules of Bankruptcy Procedure, or any other applicable stay, is hereby waived, and this order shall be effective immediately upon entry.

27. This Order and the APA shall be binding in all respects upon, (a) the Trustees, (b) the Debtors and the Debtors' bankruptcy estates, (c) all creditors of, and holders of equity interests in, the Debtors' bankruptcy estates, (d) all holders of liens or other interests (whether known or unknown) in, against, or on all or any portion of the Acquired Assets, (e) all non-debtor counterparties, (f) the Buyer, (g) the Acquired Assets, and (h) all successors and assigns of each of the foregoing.

28. Nothing contained in the Sale Order, the APA, or any related documentation shall alter or amend the terms of the Richardson Venue Lease (except as expressly agreed to in writing by the parties thereto) including, but not limited to, the Landlord's rights set forth in section 10.5 of the Lease upon its termination or expiration.

29. The Leases on Exhibit A to the APA will be assumed and assigned to the Buyer as of the Closing Date.

30. The Trustees have authority to assume and assign the Leases to the Buyer as of Closing Date.

31. Notwithstanding any language in this Order, the Buyer will comply with the terms of the Leases that are assumed as amended.

32. In Section 2(a) of the APA, the words "Ark Group of Irving, Inc." shall be replaced with "Music Factory Portfolio, L.P."

33. Section 4 of the APA is hereby modified, consistent with the Buyer's bid at the Auction, to increase the Purchase Price to five million, seven hundred thousand dollars (**$5,700,000.00**), including a five hundred thousand dollar ($500,000.00) non-cash credit, for a total cash component of five million, two hundred thousand dollars ($5,200,000.00). Notwithstanding

anything in the APA, any amount of the Purchase Price not deposited with the Sellers in advance of the sale hearing shall be wired to the Sellers within one business day after the Closing Date.

34.     Exhibit A of the APA is supplemented to include the following language: "Lease dated October 31, 2014 relating to the Cedars Venue, as amended from time to time, including Third Amendment to Lease between Landlord and Alamo Cedars, LLC."

35.     In Exhibit A of the APA, the bracket and words "[TO BE SUPPLEMENTED]" shall be deleted.

36.     Exhibit E of the APA shall be deleted.

37.     Section 10(a)(ii) shall be revised and read as follows: "Within 10 days of Closing, Seller shall deliver to Buyer executed (i) a Beverage Concession Management Services Agreement for each Venue located in Texas and (ii) an Interim Beverage Management Agreement for the Woodbury Venue."

38.     Footnote 1 in Section 10(a)(ii) shall be deleted.

# # #

# ASSET PURCHASE AGREEMENT

This Purchase and Sale Agreement (this "**Agreement**") is entered into as of June 27, 2024 by and between (1) (i) Roddrick Newhouse, in his capacity as Chapter 7 Trustee of the bankruptcy estates of Iced Tea with Lemon, LLC, Tres Peliculas, LLC, Seis Peliculas, LLC, and Woodbury Alamo, LLC, (ii) Behrooz Vida, in his capacity as Chapter 7 Trustee of the bankruptcy estate of Cinco Peliculas, LLC, and (iii) Marilyn Garner, in her capacity as Chapter 7 Trustee of the bankruptcy estate of Dos Peliculas, LLC (collectively, "**Sellers**" or "**Trustees**" and each, a "**Seller**" or a "**Trustee**") and (2) Alamo Intermediate II Holdings, LLC (together with certain of its affiliates and permitted assigns, "**Buyer**" or "**Alamo**") (Seller and Buyer and Buyer, collectively, the "**Parties**" and each, a "**Party**"), and is made with respect to the following facts:

## RECITALS

A.      On June 6, 2024 (the "**Petition Date**"), (i) Iced Tea with Lemon, LLC filed a voluntary petition under chapter 7 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "**Bankruptcy Code**") commencing the bankruptcy case *In re Iced Tea with Lemon, LLC*, Case No. 24-41976 (ELM), pending in the United States Bankruptcy Court for the North District of Texas (the "**Bankruptcy Court**"), the Honorable Edward L. Morris presiding, (ii) Tres Peliculas, LLC filed a voluntary petition under chapter 7 of the Bankruptcy Code commencing the bankruptcy case *In re Tres Peliculas, LLC*, Case No. 24-41977, pending in the Bankruptcy Court, the Honorable Martin X. Mullin presiding, (iii) Cinco Peliculas, LLC filed a voluntary petition under chapter 7 of the Bankruptcy Code commencing the bankruptcy case *In re Cinco Peliculas, LLC*, Case No. 24-41978, pending in the Bankruptcy Court, the Honorable Martin X. Mullin presiding, (iv) Seis Peliculas, LLC filed a voluntary petition under chapter 7 of the Bankruptcy Code commencing the bankruptcy case *In re Seis Peliculas, LLC*, Case No. 24-41979, pending in the Bankruptcy Court, the Honorable Edward L. Morris presiding, (v) Woodbury Alamo, LLC filed a voluntary petition under chapter 7 of the Bankruptcy Code commencing the bankruptcy case *In re Woodbury Alamo, LLC*, Case No. 24-41980, pending in the Bankruptcy Court, the Honorable Edward L. Morris presiding, and (vi) Dos Peliculas, LLC filed a voluntary petition under chapter 7 of the Bankruptcy Code commencing the bankruptcy case *In re Dos Peliculas, LLC,* Case No. 24-41981, pending in the Bankruptcy Court, the Honorable Edward L. Morris presiding (each of the chapter 7 bankruptcy cases in the foregoing (i) through (vi) the "**Bankruptcy Cases**" and each, a "**Bankruptcy Case**") (each of the debtors in the Bankruptcy Cases, a "**Debtor**" and collectively, the "**Debtors**").

B.      Seller Roddrick Newhouse is the duly appointed chapter 7 trustee of the bankruptcy estates of Debtors (i) Iced Tea with Lemon, LLC, Tres Peliculas, LLC, Seis Peliculas, LLC and Woodbury Alamo, LLC.

C.      Seller Behrooz Vida is the duly appointed chapter 7 trustee of the bankruptcy estate of Debtor Cinco Peliculas, LLC.

D.      Seller Marilyn Garner is the duly appointed chapter 7 trustee of the bankruptcy estate of Debtor Dos Peliculas, LLC.

E.      Buyer is the franchisor for each Debtor under certain franchise agreements, as applicable to each of the Debtors, pursuant to which, prior to the Petition Date: (i) Iced Tea with

Lemon, LLC operated an Alamo Drafthouse cinema, located at 100 S. Central Expressway, #14, Richardson, Texas 75080 (the "**Richardson Venue**"), (ii) Dos Peliculas, LLC operated an Alamo Drafthouse cinema at 1005 Botham Jean Blvd, Dallas, Texas 75215 ("**Cedars Venue**"), (iii) Cinco Peliculas, LLC operated an Alamo Drafthouse cinema located at 6770 Abrams Road, Dallas, Texas 75231 ("**Lake Highlands Venue**"), (iv) Seis Peliculas, LLC operated an Alamo Drafthouse cinema located at 3220 Town Center Tr, Denton, Texas 76201 ("**Denton Venue**"), (v) Woodbury Alamo, LLC operated an Alamo Drafthouse cinema located at 9060 Hudson Road, Woodbury, Minnesota 55125 ("**Woodbury Venue**") and (vi) Tres Peliculas, LLC operated an Alamo Drafthouse cinema located at 320 W Las Colinas Blvd., Building A2, Irving, Texas 75039 ("**Las Colinas Venue**") (Richardson Venue, Cedars Venue, Lake Highlands Venue, Denton Venue, Woodbury Venue and Las Colinas Venue collectively, the "**Venues**" and each a "**Venue**").

F.     Buyer wishes to purchase, and Sellers have agreed to cause each Debtor to sell, assign and transfer all of each Debtor's right, title and interest in and to any and all of each Debtor's assets (except as specifically set forth herein), free and clear of liens, claims and interests of any other party in accordance with section 363(f) of the Bankruptcy Code, subject to the approval of the Bankruptcy Court.

G.     The Trustees have all right and authority to convey and transfer each Debtor's assets subject to the requirements of the Bankruptcy Code and requisite orders of the Bankruptcy Court and have determined that it is advisable and in the best interests of each applicable bankruptcy estate and the beneficiaries of such estate to consummate the sale of assets contemplates herein.

H.     Subject to the entry of an order entered by the Bankruptcy Court approving the sale and convenance of each Debtors' assets of and all terms and conditions hereof, including the assumption and assignment of the Assumed Agreements (as defined below) and entry into Management Services Agreements (as defined below) (the "**Sale Order**"), Sellers shall have the right and authority to sell, transfer and assign the Debtors' assets to Buyer and enter into any additional agreements pertaining thereto, pursuant to the terms and conditions herein contained including, inter alia, sections 105, 363, 365 and 721 of the Bankruptcy Code.

I.     The Parties desire to enter into this Agreement to document the purchase and sale of the assets between Seller and Buyer, subject to all of the terms and conditions set forth herein.

## AGREEMENT

NOW, THEREFORE, in consideration of the foregoing recitals, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by the Parties, and subject to the approval of the Bankruptcy Court after notice to creditors and parties-in-interest in the Bankruptcy Cases, the Parties hereby agree as follows:

1. <u>Incorporation of Recitals</u>.  The recitals set forth above are incorporated herein as though fully set forth in this Agreement.

2. <u>Sale of Assets</u>.  Subject to the terms of this Agreement and entry of the Sale Order, the Sellers shall sell, assign, transfer and deliver to Buyer, and Buyer shall purchase and acquire from Sellers, all of each Debtor's and such Debtor's estate's right, title and interest in and to all of the Acquired Assets.  "**Acquired Assets**" shall mean all properties, assets, interests and rights of every nature,

tangible and intangible of each Seller, real or personal, now or existing or hereafter acquired, whether or not reflected on the books or financial statements of a Seller, and including, without limitation, each of the following categories:

a. All (i) Seller's equipment, machinery, furniture, spare parts, fixtures, furnishings, office equipment, communications equipment, vehicles and other tangible personal property of any nature and improvements relating to each Venue and the operation, management, maintenance and/or business of each Venue as conducted prior to the Petition Date, except for any of the foregoing owned by Ark Group of Irving, Inc. (the "**Las Colinas Venue Landlord**") or RPT Realty, L.P. (the "**Woodbury Venue Landlord**"), and (ii) rights of Sellers to the warranties, express or implied, and licenses received from manufacturers and sellers of the items set forth in the foregoing (i);

b. Inventory, including, without limitation, all materials, raw materials, components, supplies, work in progress and finished goods or products, subject to any inventory fluctuations occurring in the ordinary course;

c. All intellectual property and social media accounts, logon information and passwords, including trademarks, service marks, marks, patents, copyrights, trade secrets, know-how, processes, methods, industrial designs and designs whether or not specifically listed as well as any associated good will of each Debtors' business;

d. Executory contracts and unexpired leases (i) included on Exhibit A attached hereto or (ii) identified by Purchaser on or before July 15, 2024 ('Assumption and Rejection Notice Date") for assumption and assignment by no later than August 1, 2024 ("**Assumption and Rejection Deadline**"), in accordance with the filing of a completed form Notice of Assumption and Assignment attached as Exhibit B hereto (each, a "**Designated Contract**" and when referencing more than one, the "**Designated Contracts**"); provided that (x) Buyer may, at any time prior to the Closing, delete any contract or lease listed on Exhibit A and such deleted or excluded contract or lease shall not be a Designated Contract, and (y) Buyer may, at any time prior to the Assumption and Rejection Deadline, delete any contract or lease identified by the filing of Exhibit B and such deleted or excluded contract or lease shall not be a Designated Contract.

e. All deposits and prepaid expenses of Sellers relating to any Designated Contracts, including (i) security deposits with third party suppliers, vendors, service providers or landlord and lease and rental payments, (ii) tenant reimbursements and (iii) prepaid property, or other, taxes;

f. To the extent assignable, all of Seller's right, title and interest in, to and arising out of each Venue and the operation of its respective business at such Venue, including, but not limited to, all permits and licenses;

g. All books, financial information, records, files, ledgers, documentation, instruments, research, papers, data, marketing materials and information, sales or technical literature or similar information that, in each case, is in possession or control of any Seller, whether each of the foregoing is in hard or electronic format (provided that each Trustee may retain copies to the extent necessary for the exercise of their continued duties as chapter 7 bankruptcy trustee, and

will also be given access to all of the foregoing, upon reasonable notice to Buyer, for same);

h.   All goodwill associated with the Venues and the Acquired Assets;

i.   All software and the computer, communications, information, technology and network systems (both desktop and enterprise-wide) used by the Sellers or the Venues in connections with those respective businesses;

j.   All Internet domain name registrations, internet protocol range addresses (both IP4 and IP6), Internet accounts and names (including social networking and media names, such as Facebook, Twitter and LinkedIn), toll and vanity phone registrations, including registrations and applications for registration of any of the foregoing, and all passwords, logon information and goodwill associated with any of the foregoing; and

k.   any and all corresponding rights related to any of the foregoing (a) through (j).

3.   <u>No Sale of Excluded Assets</u>.  Notwithstanding anything in Section 2 of this Agreement, Acquired Assets Shall not include Excluded Assets.  As used herein "Excluded Assets" means (a) cash of each Debtor as of the Closing, (b) the Purchase Price (defined below), (c) causes of action owned by the Debtors' estates as of, and arising prior to, the Closing, including claims for relief of any Seller under chapter 5 of the Bankruptcy Code, (d) any intellectual property that is owned by (i) Alamo Intermediate II Holdings, LLC or its affiliates or (ii) Two is One, One is None, LLC, or (e) for the avoidance of doubt, any equipment, machinery, furniture, spare parts, fixtures, furnishings, office equipment, communications equipment, vehicles and other tangible personal property of any nature and improvements owned by the Las Colinas Venue Landlord or the Woodbury Venue Landlord.

4.   <u>Purchase Price</u>.   In consideration for the Acquired Assets, Buyer shall pay to Seller the amount of two million, seven hundred thousand dollars ($2,700,000.00) (the "**<u>Purchase Price</u>**") and its affiliate Alamo Drafthouse Cinemas, LLC (the licensor for each of the Venues) shall waive any and all claims against the Debtors, which total consideration the Parties agree constitutes the purchase price of the Acquired Assets.  The Purchase Price shall be deposited in full into an escrow or trust account of Trustees' choosing by Tuesday, June 25, 2024, and the funds shall be released to the Trustees upon entry of the Sale Order, provided, however, that if this Agreement is not approved by the Bankruptcy Court by July 5, 2024, then the funds shall be returned to Buyer within three business days thereafter (which deadline may be waived at the sole discretion of Buyer).

5.   <u>Sale As Is, Where Is</u>.  The Acquired Assets to be sold hereunder shall be sold "as is, where is" without any representations or warranty of any kind, including, but not limited to, any warranty of fitness or warranty for a particular purpose.  The Trustees  do not represent or warrant the quantity or the existence of any of the Acquired Assets, only that, to the extent that each Debtor has an interest therein, it is being sold to Buyer free and clear of liens, claims and interests consistent, and pursuant to Bankruptcy Code section 363(f).  Buyer shall rely exclusively on its own investigation to determine that the Acquired Assets suit Buyer's needs, provided, however, that the Sale Order must provide that (i) the sale is free and clear of liens, claims and other interests in accordance with section 363(f) of the Bankruptcy Code and (ii) include a good faith finding as

to Buyer under section 363(m) of the Bankruptcy Code.

6. <u>Bankruptcy Court Approval</u>. The Parties acknowledge that this Agreement is in all respects subject to the approval of the Bankruptcy Court after notice to creditors and other interested parties in the Bankruptcy Case.

7. <u>Assumption and Assignment of Executory Contracts and Unexpired Leases</u>:

    (a) The Designated Contracts to be assumed by Sellers and assigned to Buyer pursuant to Section 365 of the Bankruptcy Code are those executory contracts and unexpired leases (i) included on Exhibit A attached hereto or (ii) identified by Purchaser on or before the Assumption and Rejection Notice Date and identified for assumption and assignment in accordance with the form Notice of Assumption and Assignment attached as Exhibit B hereto unless otherwise removed by Buyer prior to the Closing, for any contract or lease listed on Exhibit A, or removed by Buyer prior to the Assumption and Rejection Deadline, for any contract or lease identified with the filing of a completed Exhibit B.

    (b) Counterparties to contracts and leases identified with the filing of a completed Exhibit B shall have seven (7) days to object to the assumption and assignment of the identified contracts or the cure proposed thereby. Sellers and Buyer shall request a hearing date of July 29, 2024, or such other date as the Court(s) may consider in close proximity to such date, to resolve any disputes, provided, however, that the Assumption and Rejection Deadline for any Designated Contract that is the subject of an objection and hearing shall be extended, for that contract or lease only, until such objection is disposed by order of the Court or agreement of the relevant parties.

    (c) Any contract or lease that is not expressly assumed and assigned pursuant to the terms of this Agreement, shall be deemed rejected as of the date immediately before the date of the filing of the applicable Debtor counterparty's bankruptcy petition.

8. <u>Rejection and Termination of Franchise Agreements</u>. If the Closing occurs, the Franchise Agreements listed on Exhibit C shall, as of 12:01 a.m. of the Closing Date, be deemed rejected by the Debtors pursuant to section 365(a) of the Bankruptcy Code and deemed terminated by Buyer, and such rejection and termination will occur automatically without the requirement of any further action on the part of the Sellers or Buyers to effect such rejection and termination.

9. <u>Closing</u>. The closing of the transaction contemplated in this Agreement (the "Closing") shall occur upon the entry of an order by the Bankruptcy Court in the Bankruptcy Cases approving this Agreement (the "**Sale Order**").

10. <u>Deliveries at Closing and Post-Closing</u>.

    a. At the Closing, Seller shall deliver to Buyer the following and failure to do so shall relieve Buyer of the obligation of having to consummate this Agreement and the transactions contemplated thereby:

        i. a duly executed bill of sale, executed by each Trustee on behalf of each Debtor (so that there are six (6) bill of sales in total), in the form of, and on the terms

and conditions set forth in, that attached hereto as Exhibit D, conveying each Seller's interest in the Acquired Assets;

    ii.    At the Closing, Seller shall deliver to Buyer executed (i) Management Services Agreements for each Venue located in Texas in the form attached as Exhibit E hereto and (ii) [Management Services Agreement][1] for the Woodbury Venue in the form attached as Exhibit F hereto;

    iii.    such other documents and instruments as may be reasonably required to consummate the purchase and sale of the Assets; and

    b.    At the Closing, Buyer shall receive the Purchase Price consistent with Section 3 herein.

    c.    On or before five (5) business days after Closing, Buyer may deliver to Seller a written list identifying specific assets to which Buyer declines to take possession, and Seller may abandon or otherwise dispose of those assets in accordance with the Bankruptcy Code.

11. <u>Termination</u>.

    a.    This Agreement may be terminated by either Party hereto through the provision of written notice of termination to the other Party if the Bankruptcy Court fails to enter the Sale Order, acceptable to Buyer, by July 5, 2024 (which deadline may be waived at the sole discretion of Buyer).

    b.    This Agreement may be terminated by the Trustees upon written notice to the Buyer if the Buyer breaches this Agreement and the Buyer fails to cure any such breach.

    c.    This Agreement may be terminated by Buyer upon written notice to the Trustees if any Trustee breaches this Agreement and the Trustee fails to cure any such breach.

12. <u>Assignment</u>. The Buyer may assign this Agreement, or any rights hereunder, in its sole discretion, to any affiliate of Buyer.

13. <u>Miscellaneous</u>.

    a.    <u>Captions and Headings</u>. The captions and headings in this Agreement are for convenience of reference only and shall not limit or otherwise affect the meaning hereof.

    b.    <u>Binding Nature</u>. This Agreement shall inure to the benefit of, and be binding upon, the Parties, their representatives, agents, successors and assigns.

---

[1] NTD – NAME OF DOCUMENT TO BE CONFIRMED UPON RECEIPT OF DOCUMENT

c.    Time of Essence.  Except as otherwise provided herein, time is of the essence with respect to all provisions of this Agreement in which a definite time for performance is specified; provided, however, that the foregoing shall not be construed to limit or deprive a Party of the benefit of any grace period provided for in this Agreement.

d.    Entire Agreement.  This Agreement constitutes the entire agreement and understanding between the Parties and supersedes all prior agreements and understandings, written or oral, between the Parties relating to the subject matter hereof.

e.    Waiver.  No delay on the part of any Party hereto in exercising any right, power or privilege hereunder shall operate as a waiver thereof, nor shall any waiver on the part of any Party hereto of any right, power or privilege hereunder operate as a waiver of any other right, power or privilege hereunder, nor shall any single or partial exercise of any right, power or privilege hereunder preclude any other or further exercise thereof or the exercise of any other right, power or privilege hereunder.

f.    Amendments. Neither this Agreement nor any term hereof may be changed, waived, discharged or terminated orally or in writing, except that any term of this Agreement may be amended by a writing signed by the Parties, and the observance of any such term may be waived (either generally or in a particular instance and either retroactively or prospectively) by a writing signed by the Party against whom such waiver is to be asserted.

g.    Attorneys' Fees.

(i) Each Party shall bear his or her own costs and expenses arising out of the negotiation, execution, delivery, and performance of this Agreement and the consummation of all transactions contemplated hereby.

(ii) Should any Party hereto institute any action or proceeding to enforce any provision hereof or for damages by reason of any alleged breach of any provision of this Agreement, such action shall be brought in the United States Bankruptcy Court having jurisdiction over the Bankruptcy Case(s), and the Parties hereto expressly consent to the jurisdiction of the Bankruptcy Court with respect to any such action. The prevailing Party shall be entitled to receive such amount as the Bankruptcy Court may judge to be reasonable attorneys' fees and costs for the services rendered to the prevailing Party in such action or proceeding.

h.    Governing Law.  This Agreement shall be governed and construed in accordance with the laws of the State of Texas, without regard to choice of law provisions.

i.    Severability.  If any provision of this Agreement is held to be illegal or invalid by a court of competent jurisdiction such provision shall be considered severed and deleted.  Neither such provision, nor its severance and deletion, shall affect the validity of the remaining provisions of this Agreement.

j.    Counterparts.  This Agreement may be executed in counterparts, and a signed copy shall have the full force and effect of a signature on any original.  A copy, PDF, or facsimile copy of the fully executed Agreement shall have the full force and effect of the

**EXHIBIT 1**
**Page 7 of 22**

original executed Agreement.

[*signature page follows*]

IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be executed on the date first written above.

| **BUYER** | **SELLERS** |
|---|---|

**ALAMO INTERMEDIATE II HOLDINGS, LLC**

By: _____

Chris Drazba, Chief Development Officer

**BEHROOZ VIDA**, as trustee of the bankruptcy estate of Cinco Peliculas, LLC (Case No. 24-41978)

By: _____

**MARILYN GARNER**, as trustee of the bankruptcy estate of Dos Peliculas, LLC (Case No. 24-41981)

By: _____

**RODDRICK NEWHOUSE**, as trustee of the bankruptcy estate of Iced Tea with Lemon, LLC (Case No. 24-41976)

By: _____

**RODDRICK NEWHOUSE**, as trustee of the bankruptcy estate Tres Peliculas, LLC (Case No. 24-41977)

By: _____

**RODDRICK NEWHOUSE**, as trustee of the bankruptcy estate of Seis Peliculas, LLC (Case No. 24-41979)

By: _____

**RODDRICK NEWHOUSE**, as trustee of the bankruptcy estate of Woodbury Alamo, LLC (Case No. 24-41980)

By: _____

**Exhibit A**

**List of Assumed Executory Contracts and Unexpired Leases**

1. Entertainment Complex Lease dated June 26, 2012 relating to the Richardson Venue, as amended from time to time, including Second Amendment to Lease Agreement between Silver Star CRE II, LLC and Alamo Richardson, LLC, and Third Amendment to Lease Agreement between Silver Star CRE II, LLC and Alamo Richardson, LLC.

2. Retail Lease dated July 12, 2016 relating to the Lake Highlands Venue, as amended from time to time, including Sixth Amendment to Lease between Landlord (as defined therein) and Alamo Lake Highlands LLC.

3.  Lease dated March 14, 2017 relating to the Woodbury Venue, as amended from time to time, including Fourth Amendment to Lease between Landlord and Alamo Woodbury LLC.

[TO BE SUPPLEMENTED]

# EXHIBIT B

**[Form Notice of Assumption and Assignment]**

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| In re:<br><br>  Iced Tea with Lemon, LLC,<br><br>                Debtor. | §<br>§<br>§<br>§<br>§<br>§ | Chapter 7<br><br>Case No. 24-41976 (ELM) |
| In re:<br><br>  Tres Peliculas, LLC,<br><br>                Debtor. | §<br>§<br>§<br>§<br>§<br>§ | Chapter 7<br><br>Case No. 24-41977 (MXM) |
| In re:<br><br>  Cinco Peliculas, LLC,<br><br>                Debtor. | §<br>§<br>§<br>§<br>§<br>§ | Chapter 7<br><br>Case No. 24-41978 (MXM) |
| In re:<br><br>  Seis Peliculas, LLC,<br><br>                Debtor. | §<br>§<br>§<br>§<br>§<br>§ | Chapter 7<br><br>Case No. 24-41979 (ELM) |
| In re:<br><br>  Woodbury Alamo, LLC,<br><br>                Debtor. | §<br>§<br>§<br>§<br>§<br>§ | Chapter 7<br><br>Case No. 24-41980 (ELM) |
| In re:<br><br>  Dos Peliculas, LLC,<br><br>                Debtor. | §<br>§<br>§<br>§<br>§<br>§ | Chapter 7<br><br>Case No. 24-41981 (ELM) |

## NOTICE OF ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES IN CONNECTION WITH THE SALE

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

1.      On June 6, 2024 (the "**Petition Date**"), (i) Iced Tea with Lemon, LLC filed a voluntary petition under chapter 7 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "**Bankruptcy Code**") commencing the bankruptcy case *In re Iced Tea with Lemon, LLC*, Case No. 24-41976 (ELM), pending in the United States Bankruptcy Court for the North District of

**EXHIBIT 1**
**Page 12 of 22**

Texas (the "**Bankruptcy Court**"), the Honorable Edward L. Morris presiding, (ii) Tres Peliculas, LLC filed a voluntary petition under chapter 7 of the Bankruptcy Code commencing the bankruptcy case *In re Tres Peliculas, LLC*, Case No. 24-41977, pending in the Bankruptcy Court, the Honorable Martin X. Mullin presiding, (iii) Cinco Peliculas, LLC filed a voluntary petition under chapter 7 of the Bankruptcy Code commencing the bankruptcy case *In re Cinco Peliculas, LLC*, Case No. 24-41978, pending in the Bankruptcy Court, the Honorable Martin X. Mullin presiding, (iv) Seis Peliculas, LLC filed a voluntary petition under chapter 7 of the Bankruptcy Code commencing the bankruptcy case *In re Seis Peliculas, LLC*, Case No. 24-41979, pending in the Bankruptcy Court, the Honorable Edward L. Morris presiding, (v) Woodbury Alamo, LLC filed a voluntary petition under chapter 7 of the Bankruptcy Code commencing the bankruptcy case *In re Woodbury Alamo, LLC*, Case No. 24-41980, pending in the Bankruptcy Court, the Honorable Edward L. Morris presiding, and (vi) Dos Peliculas, LLC filed a voluntary petition under chapter 7 of the Bankruptcy Code commencing the bankruptcy case *In re Dos Peliculas, LLC,* Case No. 24-41981, pending in the Bankruptcy Court, the Honorable Edward L. Morris presiding (each of the chapter 7 bankruptcy cases in the foregoing (i) through (vi) the "**Bankruptcy Cases**" and each, a "**Bankruptcy Case**") (each of the debtors in the Bankruptcy Cases, a "**Debtor**" and collectively, the "**Debtors**").

2. On [_____], 2024, the Bankruptcy Court entered an order approving the sale and convenance of each Debtors' assets (the "**Sale**") pursuant to that certain asset purchase agreement dated as of [____], 2024 by and between (1) (i) Roddrick Newhouse, in his capacity as Chapter 7 Trustee of the bankruptcy estates of Iced Tea with Lemon, LLC, Tres Peliculas, LLC, Seis Peliculas, LLC, and Woodbury Alamo, LLC, (ii) Behrooz Vida, in his capacity as Chapter 7 Trustee of the bankruptcy estate of Cinco Peliculas, LLC, and (iii) Marilyn Garner, in her capacity as Chapter 7 Trustee of the bankruptcy estate of Dos Peliculas, LLC (collectively, "**Sellers**" or "**Trustees**" and each, a "**Seller**" or a "**Trustee**") and (2) Alamo Intermediate II Holdings, LLC

**EXHIBIT 1**
**Page 13 of 22**

(together with certain of its affiliates and permitted assigns, **"Buyer"** or **"Alamo"**) (Seller and Buyer and Buyer, collectively, the **"Parties"** and each, a **"Party"**) (the **"APA"**).

3.      As part of the Sale, the Debtors are seeking to assume and assign certain executory contracts and unexpired leases (the "Designated Contracts") to the Buyer in accordance with sections 2.d and 7 of the APA. Each of the Designated Contracts is identified on Exhibit 1 attached hereto. **THE INCLUSION OF ANY DESIGNATED CONTRACT ON EXHIBIT 1 DOES NOT CONSTITUTE AN ADMISSION THAT A PARTICULAR DESIGNATED CONTRACT IS AN EXECUTORY CONTRACT OR UNEXPIRED LEASE OF PROPERTY OR REQUIRE OR GUARANTEE THAT SUCH DESIGNATED CONTRACT WILL BE ASSUMED AND ASSIGNED, AND ALL RIGHTS OF THE DEBTORS WITH RESPECT THERETO ARE RESERVED.** The cure amount (each, a "Cure Cost"), if any, that the Debtors believe is required to be paid to the applicable counterparty (each, a "Non-Debtor Counterparty," and collectively, the "Non-Debtor Counterparties") to each of the Designated Contracts under section 365(b)(1)(A) and (B) of the Bankruptcy Code is identified on Exhibit 1 attached hereto.

4.      If a Non-Debtor Counterparty objects to the Cure Costs for its Designated Contract and/or to the proposed assumption, assignment and/or transfer of such Designated Contract (including the transfer of any related rights or benefits thereunder and to the identity and adequate assurance of future performance provided by the Buyer), the Non-Debtor Counterparty must file with the Bankruptcy Court a written objection (a "Cure Cost/Assignment Objection"). Any Cure Cost/Assignment Objection must: (i) be in writing; (ii) signed by counsel or attested to by the objecting party; (iii) be in conformity with the applicable provisions of the Bankruptcy Rules and the Local Rules; (iv) state with particularity the legal and factual basis for the objection and the specific grounds therefor, including the amount of Cure Costs in dispute; and (v) be filed with the

**EXHIBIT 1**
**Page 14 of 22**

Bankruptcy Court so as to be received no later than **7 days following the service of this Notice** (the "Cure Cost/Assignment Objection Deadline").

5. **ANY NON-DEBTOR COUNTERPARTY TO A DESIGNATED CONTRACT WHO FAILS TO TIMELY FILE AND PROPERLY SERVE A CURE COST/ASSIGNMENT OBJECTION AS PROVIDED HEREIN WILL (I) BE FOREVER BARRED FROM OBJECTING TO THE CURE COSTS AND FROM ASSERTING ANY ADDITIONAL CURE OR OTHER AMOUNTS WITH RESPECT TO SUCH DESIGNATED CONTRACT IN THE EVENT IT IS ASSUMED AND/OR ASSIGNED BY THE DEBTORS AND THE DEBTORS SHALL BE ENTITLED TO RELY SOLELY UPON THE CURE COSTS, AND (II) BE DEEMED TO HAVE CONSENTED TO THE ASSUMPTION, ASSIGNMENT AND/OR TRANSFER OF SUCH DESIGNATED CONTRACT (INCLUDING THE TRANSFER OF ANY RELATED RIGHTS AND BENEFITS THEREUNDER) TO THE BUYER AND SHALL BE FOREVER BARRED AND ESTOPPED FROM ASSERTING OR CLAIMING AGAINST THE DEBTORS OR THE BUYER THAT ANY ADDITIONAL AMOUNTS ARE DUE OR DEFAULTS EXIST, OR CONDITIONS TO ASSUMPTION, ASSIGNMENT, AND/OR TRANSFER MUST BE SATISFIED UNDER SUCH DESIGNATED CONTRACT, OR THAT ANY RELATED RIGHT OR BENEFIT UNDER SUCH DESIGNATED CONTRACT CANNOT OR WILL NOT BE AVAILABLE TO THE BUYER.**

6. If a Non-Debtor Counterparty files a Cure Cost/Assignment Objection satisfying the requirements of these procedures, the Debtors and the Non-Debtor Counterparty shall meet and confer in good faith to attempt to resolve any such objection without Bankruptcy Court intervention (the "Resolution Procedures"). If the applicable parties determine that the objection cannot be resolved without judicial intervention in a timely manner, the Bankruptcy Court shall make all necessary determinations relating to such Cure Cost/Assignment Objection at a hearing scheduled pursuant to the following Paragraph.

7. Consideration of unresolved Cure Cost/Assignment Objections relating to all Designated Contracts, if any, will be held at a hearing on **June 29, 2024, at [ : ] [ ].m** or such

**EXHIBIT 1**
**Page 15 of 22**

other date determined by the Bankruptcy Court, provided, however, that any Designated Contract that is the subject of a Cure Cost/Assignment Objection with respect solely to the amount of the Cure Cost may be assumed and assigned prior to resolution of such objection.

8.      The Debtors' assumption and/or assignment of a Designated Contract is subject to approval by the Bankruptcy Court, consummation of the Sale and receipt of a Final Assumption Notice (as defined below). Absent consummation of the Sale, receipt of a Final Assumption Notice and entry of a Sale Order approving the assumption and/or assignment of the Designated Contracts, the Designated Contracts shall be deemed neither assumed nor assigned, and shall in all respects be subject to subsequent assumption or rejection by the Debtors.

9.      Buyer may, at any time prior to the consummation of the Sale, delete any executory contract or unexpired lease listed on Exhibit 1 and such deleted or excluded executory contract or unexpired lease shall not be a Designated Contract.

10.      In accordance with the Sale Order, any executory contract or unexpired lease that is not expressly assumed and assigned in the Final Assumption Notice, shall be deemed rejected as of the date immediately before the date of the filing of the applicable Debtor counterparty's bankruptcy petition.

**EXHIBIT 1**
**Page 16 of 22**

DATED: [_____], 2024                    Respectfully submitted,

/s/_____
Jared M. Slade
Texas State Bar No. 24060618
**ALSTON & BIRD LLP**
Chase Tower
2200 Ross Avenue
Dallas, TX 75201
Telephone: (214) 922-3400
Facsimile: (214) 9223899
Email: jared.slade@alston.com

And

Leib M. Lerner
California State Bar No. 227323
**ALSTON & BIRD LLP**
350 South Grand Avenue, 51st Floor
Los Angeles, California 90071
Telephone: (213) 576-1000
Facsimile: (213) 576-1100
Email: leib.lerner@alston.com
*Admitted Pro Hac Vice*

And

Stephen M. Blank
New York Bar No. 227323
**ALSTON & BIRD LLP**
90 Park Avenue
New York, NY 10016-1387
Telephone: (212) 210-9400
Facsimile: (212) 210-9444fstephen
Email: Stephen.blank@alston.com
*Admitted Pro Hac Vice*

*Attorneys for Alamo Intermediate II Holdings, LLC*
**EXHIBIT 1**

**Assigned Contracts**

**EXHIBIT 1**
**Page 17 of 22**

**Exhibit A**

| **Counterparty Name** | **Description of Contract** | **Amount Required to Cure Default Thereunder, If Any** |
|---|---|---|
|  |  |  |

**EXHIBIT 1**
**Page 18 of 22**

**Exhibit C**

**List of Franchise Agreements to be Rejected and Terminated**

**FRANCHISE AGREEMENTS**

1. Alamo Drafthouse Cinemas, LLC Franchise Agreement (For a Location in Tarrant County, Texas) by and between Alamo Drafthouse Cinemas, LLC and Iced Tea with Lemon, LLC, dated December 8, 2010 (as may have been amended).
2. Alamo Drafthouse Cinemas, LLC Franchise Agreement (Southside Lamar, Dallas, Texas) by and between Alamo Drafthouse Cinemas, LLC and Dos Peliculas, LLC, dated December 14, 2015 (as may have been amended).
3. Alamo Drafthouse Cinemas, LLC Franchise Agreement (360 Las Colinas Blvd, Irving, Texas 75039) by and between Alamo Drafthouse Cinemas, LLC and Tres Peliculas, LLC, dated September 26, 2017 (as may have been amended).
4. Alamo Drafthouse Cinemas, LLC Franchise Agreement (Lake Highlands/Intersection of Skillman Street and Abrams Road, Dallas, Texas) by and between Alamo Drafthouse Cinemas, LLC and Cinco Peliculas, LLC, dated September 26, 2017 (as may have been amended).
5. Alamo Drafthouse Cinemas, LLC Franchise Agreement (Denton/Intersection of I-35 and Highway 380, Denton, Texas) by and between Alamo Drafthouse Cinemas, LLC and Seis Peliculas, LLC, dated September 26, 2017 (as may have been amended).
6. Alamo Drafthouse Cinemas, LLC Franchise Agreement (Woodbury Lakes/Intersection of I-94 and Radio Drive, Woodbury, Minnesota) by and between Alamo Drafthouse Cinemas, LLC and Woodbury Alamo, LLC, dated February 8, 2018 (as may have been amended).

**Exhibit D**

**[Form Bill of Sale]**

**Exhibit E**

**[Form Texas Interim Management Agreement]**

**Exhibit E**

**[Form Minnesota Interim Management Agreement]**